# Richmond.

## T. L. WHITE v. J. A. REED AND MAY M. REED.

### November 18, 1926.

1. PRIVATE WAYS—*Prescription—Evidence Held to Fail to Establish a Way by Prescription.*—In the instant case complainant claimed the right to travel across the property of defendant. He claimed this right by way of prescription. The evidence was conflicting and confusing. Complainant's land was separated from the land of defendants by the property of another. There was no common source of title shown. Complainant had access to other public roads and he had no right of way appurtenant to his farm by implication or of necessity.

   *Held:* That complainant failed to establish his claim to a right of way by prescription.

2. STREETS AND HIGHWAYS—*Public Roads—Whether Public Road was ·Established—Burden of Proof—Case at Bar.*—In the instant case complainant claimed that a way across defendants' land was a public road. Complainant relied on court orders on a petition to establish a public road in 1859 to show the establishment of the road claimed. There was no report of the commissioner; there was no plat showing the location or width of the road; and the right of way claimed by complainant did not follow the course indicated in the petition as recited in the first of the court orders of 1859. It was not shown that the road was ever opened or that the owners of the tract crossed by the road waived damages ·or were compensated. The evidence was equally consistent with the idea that the parties then directly interested were contented with the old right of way then existing, as that the public road was either actually opened or accepted. The trial judge by consent went upon the premises for the purpose of inspection and decided against the establishment of the road as a public road.

   *Held:* That the burden of proof was on complainant to establish the existence and location of a public road with reasonable certainty and that he had failed to do so.

3. STREETS AND HIGHWAYS—*Establishment of Public Road—Dedication and Acceptance—Lost Records.*—A dedication or acceptance of a public road upon the part of the proper authorities cannot be presumed merely because records have been lost or destroyed. The destruc-

tion or loss of public records gives warrant for no such presumption, the effect of such loss being to change the mode of proof as to their contents and to admit secondary evidence in the place of an exemplification of the record.

4. JUDGMENTS AND DECREES—*Presumption in Favor of Judgment—Appeal and Error—Party Alleging Error Must Show it.*—The judgment of a court of competent jurisdiction is always presumed to be right until the contrary is shown, and a party in an appellate court, alleging error in the court below, must show it in the regular way, or the presumption in favor of its correctness must prevail. The burden which is cast upon appellant is not merely to lodge a doubt, but to satisfy the appellate court of the error assigned.

5. APPEAL AND ERROR—*Weight of Judgment of Lower Court where a Trial Judge has Inspected the Premises.*—Where upon the facts shown the appellate court is in doubt, and the trial judge has inspected the premises, and, therefore, was in a better position to determine the uncertainties of the case than the appellate court, his decree should be affirmed.

Appeal from a decree of the Circuit Court of Albemarle county. Decree for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Gilmer & Graves,* for the appellant.

*Chas. A. Hammer* and *W. Gilmer Dunn,* for the appellees.

PRENTIS, P., delivered the opinion of the court.

The appellant filed his. bill against J. A. Reed and May E. Reed, the appellees, alleging that as the owner of 462 acres of land he was entitled to travel across the property of the appellees to a point near the Mt. Plains church on the public road leading from Mechum's River station to White Hall. He claims this right of way by prescription, and also alleges that it is a public road across the lands of appellees.

The appellees having previously excluded the appellant from the road in question, take issue upon the allegations of the bill.

The trial court denied the relief prayed for and dismissed the bill. It is from this decree that the appeal is taken.

[1] It is perfectly apparent from the evidence, which is both conflicting and confusing, that the appellant has failed to establish his claim to a right of way by prescription.

His land is separated from the land of the appellees; there is no common source of title shown. He has access to other public roads, and he has no such right of way appurtenant to his farm by implication or of necessity.

[2] In this court, the claim that a public road was established on this location in 1861 is emphasized, and this presents a more difficult question.

The facts necessary for the comprehension of this question appear to be these: As has been stated, the lands of White, the appellant, and the lands of the appellees are not derived from a common grantor; no part of either tract appears at any time to have been the property of the same owner. Between the lands of White and the appellees there are lands formerly owned by Clarke, and now held by Humphreys. The road which it is claimed was established as a public road leads from the residence of one of the Clarke or Humphreys tracts of land, through that tract to and through the lands of the appellees to the public road at the Mt. Plains church. The Humphreys twenty-nine acre tract and the land of appellees (Reed) were once held by the same owner, who sold off this twenty-nine acre tract (now owned by Humphreys) to Clarke. This twenty-nine acre tract so sold off is separated from the Mechum's

River-White Hall public road by the lands of the appellees, so that the road or right of way in question appears to be a right of way by implication or necessity for the owners of this Humphreys land. The land of White, the appellant, is separated from the Mechum's River-White Hall road not only by the Humphreys land of twenty-nine, forty-five and twenty-five acres, respectively, but also by a large tract of land, called the E. R. Martin tract, of 205 acres. It is shown that for many years before 1861 there was a road or way used by the former owners of the Humphreys twenty-nine acre tract, referred to in the court proceedings as the Thomas J. B. Clarke tract, across the land now owned by the appellees, as their only access to a public road. This way was also used by others in the neighborhood from time to time. This was true at the time the proceeding for the establishment of a public road in that vicinity was instituted.

The record discloses these court orders:

June 8, 1859. "On the petition of Thomas J. B. Clarke, it is ordered that Joseph Dettor, one of the road commissioners of this county, be directed to view the ground for a road leading from the residence of the said Clarke to the public road running from White Hall to Mechum's River depot—passing on the line between the lands of William Ballard and William Owens—thence through the lands of said Ballard—thence through the lands of said Owens; striking the public road near the residence of said Owens; and to report to the court the conveniences and inconveniences that will result, as well to individuals as to the public if such road be established, and especially whether any yard, garden, orchard, or any part thereof, will in such cases have to be taken."

July 2, 1860. "In the matter of the petition of

Thomas J. B. Clarke for leave to open a road through the lands of William Ballard and William Owens—the road commissioner this day returned his report, whereupon on the motion of the petitioner summonses are awarded against William Ballard, William Owens and Caroline Owens, his wife, John S. Cocke, surviving trustee, James Owens, Jane Owens, Theophilus Abell and Eliza, his wife, Mary Owens, Creed Owens, William Owens, Robert Owens and John Owens (the last three reside in Buckingham county) returnable to next court.''

October 7, 1861. "*Clarke* v. *Owens*, etc., on petition for a road. On hearing the parties by their attorneys it is considered by the court that the road petitioned for be established agreeably to the report of Joseph Dettor, road commissioner. And it is ordered that the petitioner, Thomas J. B. Clarke, and William Owens and wife to open and keep in order the said road.''

It is solely upon these orders that the appellant relies to show the establishment of the road claimed. There is no report of the road commissioner, Joseph Dettor; there is no plat showing the location or width of the road; and the right of way claimed does not follow the course indicated in the petition as recited in the first order of June 8, 1859. It there appears that its beginning is at the residence of Clarke (now Humphreys) and its terminus at the public road running from White Hall to Mechum's River depot, and that this corresponds generally with the right of way claimed. But this is all that identifies it, and it is observed that its precise terminus at Mt. Plains church is not stated. It does pass along the edge of, but is not on the lands formerly owned by, William Ballard, and its width is not shown. Then it is not shown that the report of Joseph Dettor, referred to in the order of October 7,

1861, located the road on the same line as that indica-ted in the petition referred to in the order of June 8, 1859, and as the required plat is missing its precise location is unknown. It is not shown that the road was ever opened or that the then owners of the Owens (Reed) tract either waived damages or were compensated for the land so attempted to be taken.

The appellant's case depends absolutely upon these three orders and upon the fact that long before and ever since the orders were entered there has been a way leading from the Humphreys house to the White Hall and Mechum's River road. The conflict in the evidence and the confusion in the record were so apparent to the attorneys and to the trial judge that by consent he went upon the premises for the purpose of inspection and to enable him to apply the evidence. We have no such opportunity for inspection, and find it exceedingly difficult to apply the evidence to the conceded facts. There can be no fair doubt, we think, that the burden was upon the appellant, who was the complainant, to establish the existence and location of this public road with reasonable certainty.

[3] It was in *Gaines* v. *Merryman*, 95 Va. 665, 29 S. E. 738, that this court said: "Nor can we presume a dedication or acceptance upon the part of the proper authorities merely because records have been lost or destroyed. The destruction or loss of public records gives warrant for no such presumption, the effect of such loss being to change the mode of proof as to their contents and to admit secondary evidence in the place of an exemplification of the record."

In *Bare* v. *Williams*, 101 Va. 800, 45 S. E. 331, this is said: "It appears from the records of the county court that in the year 1788 a public road was established from the town of Lexington to a gap on South

Mountain, known as Lexington Gap road; and such evidence was adduced to show that from a very early period it was the only public highway from Hart's Bottom, now the city of Buena Vista, to Lexington. Still, neither the record nor parol evidence taken in aid of it identifies the road referred to as the road now claimed by appellant through the appellee. The evidence further shows that the road through appellee's premises has always been a gated road, and has not been worked or kept in repair by the public within the memory of the oldest witnesses who testify on the subject. It is settled law that public highways should be matters of public record, and identified with such reasonable certainty as to apprise the public of their location, and supply them with the means of knowing to what extent they may travel along without becoming trespassers; and also to make known to individuals how much and what portions of their land have been appropriated to public use. The requisite certainty of location is obtained in this State by the statutory requirements that a plat or diagram shall accompany and be filed with the report of the viewers appointed in proceedings to establish public roads. The burden of proof in the case rests upon the appellant to sustain his contention that the road in question is a public highway, and careful consideration of all the evidence leads to the conclusion that the fact has not been established with that degree of certainty which the law demands."

These expressions are quite applicable to the facts of this case. There is no evidence from which it can be confidently inferred that the location of the public road referred to was identical with the ancient right of way which led from the Humphreys residence through the lands of the appellee to the public road near Mt. Plains church. There is evidence that the location of

this way, which has always been used primarily as the lane or entrance to the land of the appellees, has never been changed, and that it existed as it now is long before the proceedings to establish a public road were commenced. There is no proof that a public road was ever opened, and the evidence is equally consistent with the idea that the parties then directly interested were content with the old right of way as that the public road was either actually opened or accepted.

It seems to us that under this evidence it would be a great wrong to the appellees to hold that there is this public road of indeterminate width through and across their lands.

Even, if, however, there is room for fair difference of opinion as to the effect of the testimony introduced and the burden of proof, the uncertainties of the case are so great and so numerous as to lead to the same result. This because of the rule stated by Lord Wensleydale, in *Mayor, &c., of Beverly* v. *Attorney General*, 6 H. L. Cas. 332, in this language: "I take it to be perfectly clear that when a court of error is considering a former decision on appeal, that decision is not to be over-turned unless the court of error is perfectly satisfied that the decision is wrong. *Prima facie* it is to be con-sidered a right decision, and is not to be deprived of its effect unless it is clearly proved to the satisfaction of the judge that the decision is wrong; but he must con-sider the whole circumstances together, and if he still feels satisfied upon the whole of the case that the de-cision is wrong, he ought undoubtedly to overturn it; it is only to be considered *prima facie* right. The *onus probandi* lies on the opposite party to show that it is wrong, and, if he satisfies the conscience of the judge that it is wrong, it ought to be reversed."

[4] Judge Burks, the elder, in *Herman* v. *City of*

*Lynchburg*, 33 Gratt. (74 Va.), at page 43, thus expresses it: "The judgment of a court of competent jurisdiction is always presumed to be right until the contrary is shown, and a party in an appellate court, alleging error in the court below, must show it in the regular way, or the presumption in favor of its correctness must prevail."

In *Shipman* v. *Fletcher*, 91 Va. 487, 22 S. E. 458, Riely, J., expresses it thus: "The judgment of a court of competent jurisdiction is justly entitled to great weight. It is always presumed to be right until the contrary is shown. An appellate court will not overturn it unless satisfied that it is wrong. It devolves on the party complaining to show error, and to satisfy the appellate court that the judgment or decree complained of is wrong."

This court has repeated and enforced that rule frequently. *Smith* v. *Smith*, 92 Va. 700, 24 S. E. 280; *Va. Coal Co.* v. *Thomas*, 97 Va. 538, 34 S. E. 486; *Atlantic & Danville R. Co.* v. *Delaware Construction Co.*, 98 Va. 514, 37 S. E. 13; *Stevenson* v. *Levinson*, 103 Va. 592, 49 S. E. 974; *Morrissette* v. *Cooke*, 122 Va. 593, 95 S. E. 449; *Reynolds* v. *Adams*, 125 Va. 315, 99 S. E. 695; *Wood* v. *Lester*, 126 Va. 173, 101 S. E. 52.

This is a case for the application of that rule. The impartial mind is left in a state of uncertainty, possibly due to the fact that the record of the proceedings in the road case has been lost or destroyed, but this court ought not to reverse the decree of the trial court unless satisfied that it is wrong. The burden which is cast upon the appellant in this court is not merely to lodge a doubt, but to satisfy this court of the error assigned. It would be going too far, perhaps, to say that error must be demonstrated, for that might be construed to imply mathematical precision, but certain it is that an

opinion reversing a judgment should convince the impartial mind.

[5] While we are in doubt, under the facts shown, it must be conceded that the trial judge, having inspected the premises, was in a better position to determine the uncertainties of the case than we are; therefore, we are of opinion to affirm the decree.

*Affirmed.*