# Wytheville.

## SUSIE JEFFRIES SWETNAM, ET ALS. V. NANNIE JEFFRIES ANTONSANTI, ET ALS.

### June 14, 1928.

Argued and submitted before Judge Holt took his seat.

1. LIS PENDENS—*Necessity of Memorandum required by Section 3566 of the Code of 1904—Bona Fide Purchaser—Case at Bar.*—In the instant case land was purchased pending the litigation. It was clearly shown by the evidence that the grantee of the land was a *bona fide* purchaser without notice of the litigation. It was admitted that no *lis pendens* was ever filed and recorded as required by section 3566 of the Code of 1904.

   *Held:* That there was no error in the action of the court in decreeing that the land in question was not subject to a lien for the purchase money paid therefor by the purchaser.

2. PAYMENT INTO COURT—*Interest on Deposits into Court—Decree Directing Commissioner to Pay Interest.*—In the instant case the proceeds from the judicial sale of the farm was placed in the hands of a commissioner. To secure this money a surety company became surety upon the bond of the commissioner. By decrees entered in the cause the commissioner was directed to pay the interest arising from the fund to certain parties.

   *Held:* That this action of the court relieved the commissioner of all responsibility on account of interest so paid.

3. INFANTS—*Sale of Infant's Lands—Validity of Decree—Interest of Parties Attacking Decree—Case at Bar.*—In the instant case it was contended that the lower court was without jurisdiction to entertain a bill to confirm the sale of the interest of an infant in a farm. The infant had a vested interest in any recovery from defendant in the instant suit. Upon the death of the infant his interest descended to his sister who was a party to the suit in which the decree was entered conveying the interest of the infant in the farm in question and acquiesced in everything that was done. The purchaser of the farm was a *bona fide* purchaser.

   *Held:* That conceding the decree directing the commissioner to convey the interest of the infant to the *bona fide* purchaser to be void, this

Syllabus.

did not affect the right of appellants, for the reason that they are only entitled to share in the proceeds of the sale to such an extent as their interests may appear in the proceeds derived from the sale of the farm.

4. JUDGMENTS AND DECREES—*Conclusiveness of Decree—Validity of Bond—Case at Bar.*—The instant case was a suit by a principal against his agent for accounting and settlement. The court decreed that the commissioner to whom the cause was referred should credit defendant by the amount of a bond for $5,000.00 of plaintiff to defendant. It was contended by appellants that the bond was never negotiated but held in fraud of the rights of complainant. It was contended by appellees that the proof upon the question clearly preponderated in favor of the validity of this bond.

*Held:* That whatever doubt there might be on this question, it conclusively appeared from the evidence that appellants had not borne the burden imposed upon them by law, to point out clearly and convincingly the error in the decision of the lower court.

5. JUDGMENTS AND DECREES—*Presumption in Favor of Judgment—Burden of Proof in Appellate Court.*—The judgment of a court of competent jurisdiction is always presumed to be right until the contrary is shown, and a party in an appellate court, alleging error in the court below, must show it in the regular way, or the presumption in favor of its correctness must prevail

6. APPEAL AND ERROR—*Conclusiveness of Decree.*—In a suit by a principal against his agent the lower court decreed that credit should be allowed the agent for a certain debt alleged to have been paid by his wife. There was a sharp conflict of evidence as to whether or not this debt was paid by the agent's wife. The commissioner to whom this question of payment was referred found in favor of appellees and this action was upheld by the trial court.

*Held:* That the burden was upon appellants to show error in the decree of the trial court, which burden they had failed to bear.

7. PRINCIPAL AND AGENT—*Question of Agency—Case at Bar.*—The alleged facts and circumstances upon which cross-assignments of error were predicated in the instant case are to be found in three voluminous records embracing transactions extending over a period of twenty years. To discuss the assignments *seriatim* would involve an expenditure of time and energy not called for in a correct disposition of the cause. Reduced to their last analysis, these assignments merely present the question of whether or not the original defendant in the instant case was the attorney and trustee of the original complainant in the conduct of that complainant's affairs. That this defendant was the attorney and trustee of the complainant was plainly evinced by competent evidence. Instead of being guilty of laches, appellants had been diligent in the prosecution of their rights, under

serious handicaps, and the decree complained of in this regard was plainly right.

8. APPEAL AND ERROR—*Accounts and Accounting—Reference for Accounting—Case at Bar.*—In the instant case it was assigned as error that the lower court erred in referring the cause to a commissioner for an accounting instead of fully determining the rights of the parties by its decree. In this connection the Supreme Court of Appeals was asked to render a final judgment in favor of appellants. The original and subsequent bills filed in the cause prayed for an accounting. In response to this prayer the trial court awarded the accounting complained of. The instant case had been pending for a period of twenty years. The Supreme Court of Appeals regretted that it was not in a condition to be disposed of in that court, but such was the case; the state of the record rendered an accounting essential.

Appeal from a decree of the Circuit Court of Prince William county. From the decree complainants appealed and defendants assigned cross-error.

*Affirmed.*

The opinion states the case.

*A. W. Reynolds* and *Thomas H. Lion,* for the appellants.

*J. Donald Richards* and *R. A. McIntyre,* for the appellees.

CAMPBELL, J., delivered the opinion of the court.

This is the third time the Supreme Court of Appeals has had occasion to review this cause. The former decisions are reported in 123 Va. 147, 96 S. E. 197, and 142 Va. 218, 128 S. E. 510, wherein the facts are fully set forth.

A brief history of this litigation is as follows:

Eustace Jeffries, the owner of a large estate in Fauquier county, Virginia, in 1907 filed a bill in chancery against his nephew, James P. Jeffries and his wife,

Mary H. Jeffries. In the bill it is set forth that the complainant, being aged and feeble, placed his large estate in the hands of James P. Jeffries as his agent, trustee and attorney, to be managed, controlled and settled by him.

Thereafter, Eustace Jeffries devoted no further attention to his estate and business and James P. Jeffries assumed control of the same, collected the indebtedness due Eustace Jeffries, sold some of his property, purchased certain property in his own name with proceeds of debts due Eustace Jeffries, which he had collected, and, finally, caused a creditor's suit to be instituted in the Circuit Court of Fauquier county against Eustace Jeffries, in which certain alleged indebtedness was set up against Eustace Jeffries. The suit was prosecuted to a decree for the sale of a valuable farm of Eustace Jeffries known as "Road Island," so called because it is surrounded by roads. James P. Jeffries became the purchaser in his own name and procured a deed of conveyance to himself. Thereafter, James P. Jeffries conveyed this farm to his wife and two children. Eustace Jeffries having previously called upon his attorney, James P. Jeffries, for a settlement, without success, upon ascertaining that James P. Jeffries had conveyed the farm above mentioned to his wife, Mary H. Jeffries, and children, instituted the first suit to set aside the conveyance, and for an accounting. This suit was brought against James P. Jeffries and his wife, without making the children defendants.

Eustace Jeffries died pending this suit, leaving a will by which he bequeathed and devised his estate, including any recovery in the suit, to his nephew, E. Marshall Jeffries, and the said James P. Jeffries, in equal shares for life, with remainder to their heirs. The suit was reviewed in the name of his personal representatives,

but the beneficiaries of his will were not made parties and the will was not set up in the case. A final decree for the plaintiff was entered by the circuit court and the defendants appealed. The decree was reversed solely because the two then infant children of James P. Jeffries were necessary parties and had not been made such, and the cause was remanded. (*Jeffries* v. *Jeffries Ex'or*, 123 Va. 147, 96 S. E. 197.)

The two children of James P. Jeffries were then brought before the court as defendants, but E. Marshall Jeffries and his children, beneficiaries under the will, were not made parties. In order to protect their interests the instant suit was instituted in the Circuit Court of Prince William county, to which county the former suit had been removed. The last mentioned suit is a bill in the nature of a cross-bill in the former suit and brought before the court all necessary and proper parties. A demurrer to this bill was sustained by the circuit court and the bill was dismissed. The plaintiffs appealed, the decree was reversed and the case was remanded. (*Jeffries* v. *Antonsanti*, 142 Va. 218, 128 S. E. 510.)

During the progress of this suit, the widow of James P. Jeffries and his daughter, who had now arrived at her majority and married Louis Antonsanti, sold the farm to Helen S. Leach, and the son, James P. Jeffries, Jr., still being an infant, the second above mentioned suit was brought by Mary H. Jeffries, his mother, and Nannie Jeffries Antonsanti and Louis Antonsanti, her husband, against James P. Jeffries, Jr., an infant, and J. A. C. Keith, executor of Eustace Jeffries, deceased, to have the contract of sale confirmed as to the infant. The executor consented to the sale and a decree confirming the sale was entered and the purchase money placed in the hands of a

commissioner to be held subject to the final determination of the first above entitled cause.

Mary H. Jeffries, James P. Jeffries, Jr., and E. Marshall Jeffries, as well as James P. Jeffries, died during the progress of these causes and the same were revived against each of their personal representatives and heirs at law; and at the time of the final decree of October 14, 1926, Nannie Jeffries Antonsanti, sole heir at law of James P. Jeffries, of Mary H. Jeffries and of James P. Jeffries, Jr., on the one side, and the appellants children and heirs at law of E. Marshall Jeffries, deceased, on the other side, were the only parties interested in these causes under the will of Eustace Jeffries, deceased.

The causes were brought on to be heard together and on the 14th day of October, 1926, a decree was entered therein by the Circuit Court of Prince William county, settling the principles of the cause in favor of appellants, but denying their right to have the conveyances of the Road Island farm to Helen S. Leach and those claiming under her set aside; holding that the commissioner was not chargeable with interest on the purchase money in his hands; that appellants were not entitled to have the purchase money charged as a lien on the land, and the commissioner to whom these causes were referred to settle the accounts of James P. Jeffries, as attorney and agent of Eustace Jeffries, should allow him certain credits.

It is assigned as error that the court erred in decreeing that the sale of the Road Island farm to Helen S. Leach was proper; that the titles of the defendants to the various subdivisions of the said farm, derived under said Helen S. Leach, are superior to the rights of the petitioners, sole heirs at law of E. Marshall Jeffries, deceased, and that the said Road Island farm,

and the subdivisions thereof, are not subject to a lien for the purchase money agreed to be paid therefor by Helen S. Leach and any amount thereof with which the defendant, R. A. McIntyre, commissioner, may be chargeable.

Helen S. Leach purchased from Mary H. Jeffries and her daughter, Nannie Jeffries Antonsanti, their interest in the Road Island farm, by written contract antedating the institution of the suit of *Antonsanti* v. *Jeffries.* In order to extract title from the infant, James P. Jeffries, Jr., the above styled suit was instituted by Mary H. Jeffries in her individual capacity and not as guardian of the infant, James P. Jeffries, Jr.

Claiming to act pursuant to the power vested in him under the will of Eustace Jeffries, the executor consented to the conveyance of the infant's interest by the commissioner appointed for that purpose.

After this action by the court, Mrs. Leach conveyed a portion of the Road Island farm to certain grantees who in turn have executed numerous conveyances of the property. In support of her contention that she was a *bona fide* purchaser without notice, Mrs. Leach testified that she had no knowledge, either actual or constructive, of the claim of Eustace Jeffries.

It is admitted by appellants that no *lis pendens* was ever filed and recorded. It is contended, however, that such action was not necessary, as Mrs. Leach was a *pendente lite* purchaser, and further, that the filing of a *lis pendens* was not necessary at the time of the institution of the original suit in 1907. That Mrs. Leach and those grantees who trace their title back to her were *bona fide* purchasers is clearly shown by the evidence, and is supported by the decisions of this court.

Section 3566 of the Code of 1904 is as follows: "No

*lis pendens*, or attachment under chapter one hundred and forty-one, shall bind or affect a *bona fide* purchaser of real estate, for valuable consideration, without actual notice of such *lis pendens* or attachment, unless and until a memorandum setting forth the title of the cause, the general object thereof, the court in which it is pending, a description of the land, and the name of the person whose estate is intended to be affected thereby, shall be left with the clerk of the court of the county or corporation in which the land is situate, who shall forthwith record the said memorandum in the deed book, and index the same in the name of the persons aforesaid."

In *Vicars* v. *Salyer*, 111 Va. 308, 68 S. E. 988, it appears that the appellee, Salyer, was a purchaser of land while a suit was pending to set aside a conveyance thereof, and to subject the land to the payment of certain debts due from the grantor. There was a decree for the sale of the land. In a contest between Vicars and Salyer the trial court held that the rights of Salyer, the *pendente lite* purchaser, were superior to those of the purchaser at the judicial sale, because the *lis pendens*, though recorded, had not been properly indexed. Upon appeal, this holding was affirmed.

Construing section 3566, Code 1904, Judge Buchanan said: "Because of the hardship which frequently resulted from the enforcement of the rule, especially to *bona fide* purchasers, statutes have been passed in England and in many of the States of this country intended, as far as possible, to remedy the mischiefs of the old law, or to lessen its hardships. One of the objects of the legislature in enacting section 3566 manifestly was to provide a means by which a person desiring to purchase land might by an examination of the deed books in the county where the land was

situated ascertain whether or not there was pending a suit which might affect the title of the land."

In the opinion it is also said: "It seems to us that to require a purchaser to look to any other source of information than the deed books—that which the statute has provided for him—would be contrary to the spirit and policy if not the letter of the statute. * * * We are of the opinion, therefore, that section 3566 would fail to accomplish the purpose for which it was manifestly enacted unless it be held that the recording of the memorandum in the deed book and indexing the same in the manner required by the section are necessary to the complete docketing of a *lis pendens.*"

If failing to index a *lis pendens*, though recorded, is fatal to the exercise of equitable relief, then how much more so is the failure to either file or record a *lis pendens* as appears in the instant case. See *Newman* v. *Chapman*, 2 Rand. (23 Va.) 93, 14 Am Dec. 766; *Hurn* v. *Keller*, 79 Va. 415; *Easley* v. *Barksdale*, 75 Va. 279; *Steinman* v. *Clinchfield*, 121 Va. 633, 93 S. E. 684.

[1] There is no error in the action of the court in decreeing that the Road Island farm is not subject to a lien for the purchase money paid therefor by Helen S. Leach.

[2] By decree entered October 8, 1910, the sum of $23,956.75, proceeds from the sale of this farm, represented by cash and bonds, was placed in the hands of C. M. White, commissioner. It now appears that after deducting costs, commissions and other expenses, the sum of $18,956.75 went into the hands of R. A. McIntyre, who was appointed to succeed Commissioner White, deceased. To secure the money so held by him it appears that the United States Fidelity and Guaranty Company of Baltimore, Maryland, is surety upon the

bond of Commissioner McIntyre. By decrees entered in the cause, the commissioner was directed to pay the interest arising from the fund to the vendees of James P. Jeffries, Sr. This action of the court relieves the commissioner of all responsibility on account of interest.

[3] Complaint is also made that the lower court was without jurisdiction to entertain the bill filed by Mary H. Jeffries and to confirm the sale of the interest of the infant, James P. Jeffries, to Helen S. Leach. Even though it be conceded that the decree directing a commissioner to convey the interest of the infant to Mrs. Leach was void, this does not affect the rights of appellants, for the reason that the court is of opinion that they are only entitled to share in the proceeds of the sale to such an extent as their interests may appear.

James P. Jeffries, Jr., under the will of Eustace Jeffries, had a vested interest in any recovery from James P. Jeffries, Sr. Upon the death of Jeffries, Jr., his interest descended to Nannie Jeffries Antonsanti. Antonsanti was a party to the suit in which the decree was entered conveying the interest of Jeffries, Jr., to Mrs. Leach, and acquiesced in everything that was done. Mrs. Leach and her grantors being *bona fide* purchasers, appellants are restricted in the assertion of their rights on this score to whatever interest they may have in the proceeds derived from the sale of the Road Island farm.

The second assignment of error is as follows: "The court erred in decreeing that the commissioner to whom the causes were referred should credit James P. Jeffries' estate by the amount of the $5,000.00 bond of Eustace Jeffries to said James P. Jeffries, secured by the deed of trust."

This assignment of error relates to a $5,000.00 bond executed by Eustace Jeffries, payable to James P.

Jeffries, Sr., and secured by deed of trust. It is the contention of appellants that this bond was executed at the request of James P. Jeffries, Sr., to enable him to negotiate the bond and raise money for the benefit of Eustace Jeffries; that the bond was never negotiated but held in fraud of the rights of Eustace Jeffries.

It is contended by appellees that the proof upon this question clearly preponderates in favor of the validity of this bond. To support this contention, evidence is adduced that Eustace Jeffries executed this bond nearly ten years before any controversy between him and James P. Jeffries, Sr., arose; that, in order for Eustace to borrow the sum of $5,000.00, secured by deed of trust, from one Williams, he obtained the consent of James P. Jeffries to waive his priority in order to effectuate the loan; that Eustace Jeffries appeared as a witness before the commissioner in the suit of *Gaines* v. *Jeffries* and did not contest the genuineness of this bond which was reported, without exception, as a valid lien.

Two trial judges have passed upon the conflicting evidence involving the validity of this bond, and both have found in favor of the appellees.

[4] Whatever doubt we may have on this question, it conclusively appears that appellants have not borne the burden imposed upon them by law, to point out clearly and convincingly the error in the decision of the lower court.

[5] In *Herman* v. *City of Lynchburg*, 33 Gratt. (74 Va.) 43, Burks, Sr., delivering the opinion of the court, said: "The judgment of a court of competent jurisdiction is always presumed to be right until the contrary is shown, and a party in an appellate court, alleging error in the court below, must show it in the regular

way, or the presumption in favor of its correctness must prevail."

In *White* v. *Reed*, 146 Va. 254, 135 S. E. 809, Judge Prentis said: "The burden which is cast upon the appellant in this court is not merely to lodge a doubt, but to satisfy this court of the error assigned. It would be going too far, perhaps, to say that error must be demonstrated, for that might be construed to imply mathematical precision, but certain it is that an opinion reversing a judgment should convince the impartial mind." In *Kiser* v. *Hannah*, 148 Va. 599, 139 S. E. 279, the above doctrine is approved.

The third assignment of error reads thus: "The court erred in decreeing that the commissioner should allow James P. Jeffries credit for the Williams debt alleged to have been paid by his wife."

[6] There is a sharp conflict of evidence as to whether or not the Williams debt was paid by Mrs. Jeffries. The commissioner to whom was referred the question of payment found in favor of appellees and this action was upheld by the trial court. What has been said in connection with the second assignment of error applies with equal force to this assignment of error.

One other assignment of error set forth in the petition for an appeal will be discussed after disposing of the cross-assignments of error set forth in the brief of appellees.

These cross-assignments are fourteen in number, and call in question the action of the court in considering the depositions taken and filed in the suits of *Jeffries and others* v. *Jeffries, Ex'or*, and *E. Marshall Jeffries et al.* v. *Nannie Jeffries Antonsanti;* in overruling appellees' motion to strike out the evidence of D. P. Kelly; in finding that James P. Jeffries was the attorney and agent for Eustace Jeffries in certain litigation; in finding

that, in his purchase of Road Island, James P. Jeffries acted as trustee for Eustace Jeffries; in finding that James P. Jeffries held the Hord judgment as trustee; in holding James P. Jeffries liable for the Porter judgment; in holding James P. Jeffries liable for the Brown debt; in finding that James P. Jeffries held the John B. Jeffries property as trustee for Eustace Jeffries; in finding that James P. Jeffries held the Road Island farm as trustee for Eustace Jeffries; in ordering a reference upon the matters named; in reading the deposition of D. P. Kelly; in not dismissing the bill in the cause for laches; in not dismissing the bill upon the evidence, because the allegations in the bill cannot be proven without the evidence of D. P. Kelly which is not corroborated; in not holding the evidence submitted by appellants insufficient to establish the facts necessary to justify the entry of a decree in their behalf.

The alleged facts and circumstances upon which these assignments of error are predicated are to be found in three voluminous records and embrace transactions extending over a period of twenty years.

[7] To discuss these assignments *seriatim* would involve an expenditure of time and energy not called for in a correct disposition of this cause. We have spent several days in a careful consideration of the records and briefs in this cause and we are of the opinion that, reduced to their last analysis, these assignments merely present the question of whether or not James P. Jeffries was the attorney and trustee of Eustace Jeffries in the conduct of his (Eustace Jeffries') affairs. That James P. Jeffries was the attorney and trustee of Eustace Jeffries is plainly evinced by competent evidence, including that of D. P. Kelly. Thus, instead of being guilty of laches, appellants have been diligent in the prosecution of their rights, under serious handicaps.

The decree complained of in this regard is plainly right and will be affirmed.

[8] The last assignment of error is that the court erred in referring the cause to a commissioner for an accounting instead of fully determining the rights of the parties by its decree. In this connection this court is asked to render a final judgment in favor of appellants. The original bill filed in this cause and subsequent bills filed pray for an accounting. In response to this prayer the trial court awarded the accounting herein complained of. As the cause has already been pending for a period of twenty years, we regret that it is not in a condition to be disposed of in this court; but such is the case. An accounting, in the present state of the record, is essential. This accounting should be proceeded with speedily, in order that an end may be put to this litigation.

The decree complained of will be affirmed.

*Affirmed.*